UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 1:12-cr-0143-WTL-TAB |
| | ) | |
| DONALD E. CRUMPTON and | ) | -01 |
| LAFAWN CRUMPTON, | ) | -02 |
| | ) | |
| Defendants. | ) | |

**ENTRY ON GOVERNMENT'S *SANTIAGO* PROFFER**

On November 12, 2013, the Government submitted its *Santiago* proffer, describing much of the evidence that it will present at trial in regard to the conspiracy alleged in the indictment of the Defendants (dkt. no 116). Defendant LaFawn Crumpton filed a response to the Government's submission (dkt. no. 133) making several objections.[1] The Government then submitted a reply in support of its proffer (dkt. no. 137). The Court, being duly advised, finds that if the Government produces the proffered evidence at trial, it will have satisfied the requirements of the co-conspirator exception to the hearsay rule under Federal Rule of Evidence 801(d)(2)(E).

## I. STANDARD

The Government requests that the Court make a preliminary determination regarding the admissibility of certain hearsay statements made by LaFawn and Donald Crumpton as well as fourteen Little Miracles, Inc. employees ("the Employees") pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978). In order to do so, "the government must convince the court, by a preponderance of the evidence, that (1) a conspiracy existed, (2) the defendant and

---

[1] Defendant Donald Crumpton did not object to the Government's proffer (dkt. no. 129).

the declarant were members of the conspiracy, and (3) the statement(s) sought to be admitted were made during and in furtherance of the conspiracy." *United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009) (citing *Santiago*, 582 F.2d at 1133-34). If the Government meets its burden via its proffer, the Court will conditionally admit the co-conspirator statements.

## II.   ANALYSIS

In the case at bar, the Government seeks a conditional ruling from this Court admitting "all statements made by any of the Employees in furtherance of the conspiracy[.]" Gov. Proffer at 14. As explained more fully below, the Court finds that the Government has shown by a preponderance of the evidence that the conspiracy described in its proffer existed, that the named Employees were members of the conspiracy, and that the statements expected to be elicited at trial were made during and in furtherance of the conspiracy.

### A.  The Proffered Facts Demonstrate the Existence of a Conspiracy

The conspiracy at issue is that alleged in the indictment, namely, that the Defendants conspired with other employees of Little Miracles to commit wire fraud and money laundering by submitting false and fraudulent claims to the United States of America and the State of Indiana. The conspiracy allegedly pursued these illegal objectives in three ways. First, false attendance entries were made—each child who was enrolled at Little Miracles was "swiped in" for twenty-five hours of attendance each week, regardless of their actual attendance. Second, Little Miracles submitted claims for the maximum number of meals and snacks for every approved child, regardless of whether the child was in attendance or even received those meals or snacks. Finally, false receipts from the purchase of food—purported to be the food served at the Little Miracles centers—were maintained for auditing purposes.

Based on the Government's proffer, the Court finds that it has met its burden to demonstrate that an agreement to pursue the alleged scheme existed between the Defendants and the Employees, beginning sometime in 2006 and continuing until 2010, and that all were members of this same conspiracy for some or all of that time period.  The evidence is expected to show that both LaFawn and Donald Crumpton instructed the Employees to claim at least twenty-five hours of attendance for all enrolled children as well as mark all children "as eating" regardless of whether or not that child was in attendance or served any meals or snacks for that particular week.

Further, it is clear that the object of this scheme, to defraud the United States of America and the State of Indiana, was unlawful.  The Government has alleged that Little Miracles received at least $9 million in payments for its claims between January 2007 and June 2010, a majority of which are believed to be false and fraudulent.  The Court, therefore, finds that if the Government produces the evidence contained in its *Santiago* proffer, it will have demonstrated, by a preponderance of the evidence, that a conspiracy existed to defraud both the United States of America and the State of Indiana by submitting false and fraudulent claims.

### B. The Defendants and the Employees Were Members of the Conspiracy

The Court also finds that the Government's proffered evidence demonstrates by a preponderance of the evidence that the Defendants and the Employees were members of the conspiracy at one point or other during 2006-2010.  "Once a conspiracy is established, only slight evidence is required to link a defendant to it." *United States v. Shoffner*, 826 F.2d 619, 6276 (7th Cir. 1987).  Each of the Defendants and Employees' participation in the conspiracy is outlined below.

*Defendants Donald and LaFawn Crumpton* – LaFawn Crumpton was the President of Little Miracles, and Donald Crumpton was its Vice President. The Government has proffered evidence that the Defendants specifically directed the Employees to submit false claims for both attendance and meals and snacks in order to receive the maximum amount of payments from the United States of America and the State of Indiana.

*Clemons-Calderon* – As Little Miracles' Center Director, Clemons-Calderon instructed other Employees to submit false entries for attendance. She told the other Employees to "swipe in" every child for twenty-five hours, regardless of what their actual attendance was.

*Pame* – As Little Miracles' District Director, Pame directed the other Employees to collect information from center parents in order to submit false claims, and also informed the Employees that it was their responsibility to claim twenty-five hours of attendance per week for all children, regardless of their actual attendance.

*Cunningham* – Cunningham was specifically hired to submit false claims for meals and snacks for all enrolled children. She trained the other Employees to do the same.

*Darden* – On a weekly basis from 2006 through 2008, Darden made false attendance entries at each Little Miracles center, having no knowledge of which children actually attended the center for that week or for how many hours.

*Cole* – Cole was provided false receipts from LaFawn Crumpton and ordered to give them to Cunningham so they could be maintained for auditing purposes.

*Brown, Turentine, Jackson, and Byrd* – All of these Employees submitted false claims for meals and snacks, claiming the maximum amount possible regardless of whether the children received the meals or snacks or even attended the center for that week at all.

*Rice, Tate, White, Bacon, and Smalls* – All of these Employees submitted both false attendance and false meal and snack claims.

### C. The Employees' Statements Were Made in Furtherance of the Conspiracy

Finally, the Court finds that the Government's proffer is sufficient to conditionally establish that the statements it seeks to admit under Rule 801(d)(2)(E) were made during and in furtherance of the conspiracy outlined above. The Government did not provide the specific statements of each declarant for a determination of whether the statement furthered the conspiracy in some way; nevertheless, the Court believes that in examining the proffer in its entirety, it can still make the preliminary determination that the statements the Government will likely elicit from the Employees furthered the conspiracy in some way. "The standard to be applied is whether some reasonable basis exists for concluding that the statement furthered the conspiracy." *Shoffner*, 826 F.2d at 628. Based on the evidence before it, the Court believes it can make this preliminary determination.

In conclusion, the Court finds that the Government has satisfied its burden in showing that a conspiracy existed, that the Employees were all members of the conspiracy, and that the statements likely to be elicited at trial from the Employees were made during and in furtherance of the conspiracy. Mrs. Crumpton, however, has made several objections to the Government's *Santiago* proffer, requesting that this Court deny it. For the reasons explained below, the Court does not find Mrs. Crumpton's objections to be persuasive.

### III.     LaFawn Crumpton's Objections

Mrs. Crumpton alleges the Government's *Santiago* proffer was deficient for three reasons: 1) the Government did not provide the Employees' statements it seeks to use at trial; 2) many of the Employees did not participate in the alleged conduct during their entire course of

5

employment; and 3) many of the Employees were not members of the alleged conspiracy because they acted under the threat of losing their jobs if they refused.

As to Mrs. Crumpton's first argument, the Government is correct that it did not need to submit each statement for review by the Court. *See United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991) ("[T]he court can, even in the absence of a pretrial proffer, conditionally admit the body of coconspirator's statements subject to the Government's eventual proof of the foundational elements[.]"). Mrs. Crumpton's second argument is that some of the Employees were not members of the conspiracy during the entire course of their employment. She therefore requests that the Court limit those Employees' hearsay testimony to when they were members of the conspiracy. However, as the Government notes, co-conspirator statements are admissible under Rule 801(d)(2)(E) even against conspirators who join the conspiracy after such statements were made, as long as the conspiracy existed at the time. *See United States v. Sophie*, 900 F.2d 1064, 1074 (7th Cir. 1990). Of course, statements made by the Employees after they withdrew from the conspiracy—either by refusing to enter false claims or by ending their employment at Little Miracles—are not be admissible, as the Government notes.

Finally, Mrs. Crumpton's argues that because certain Employees only agreed to participate in the alleged conspiracy "under a threat of losing their jobs," they did not "agree" to commit a crime and therefore cannot be members of the alleged conspiracy. Def. Response at 3. In essence, this is a duress argument. The traditional defense of duress is recognized in the Seventh Circuit—a defendant wishing to present this defense must prove: "(1) she reasonably feared immediate death or serious bodily harm unless she committed the offense; and (2) there was no reasonable opportunity to refuse to commit the offense and avoid the threatened injury." *United States v. Sawyer*, 558 F.3d 705, 711 (7th Cir. 2009) (citing *United States v. Jocic*, 207

6

F.3d 889, 892 (7th Cir. 2000)). Mrs. Crumpton has not presented evidence that the Employees feared death or serious bodily harm, but rather, that they feared they would lose their jobs if they did not comply. Thus the harm they faced was not physical, but rather financial. Mrs. Crumpton, therefore, requests this Court to find that because she and Mr. Crumpton threatened the Employees' jobs if they did not submit false and fraudulent claims, the Employees never "agreed" to the conspiracy. As such, she argues that they were not co-conspirators, and therefore, that no co-conspirator statements can be admitted pursuant to Rule 801(d)(2)(E). The Court does not agree.

While the Seventh Circuit has recognized that in some contexts economic duress and/or coercion may serve as an affirmative defense to a conspiracy charge, Mrs. Crumpton has not produced evidence suggesting that the Employees would be entitled to this defense. *See MCM Partners, Inc. v. Andrews-Bartlett & Associates, Inc.*, 62 F.3d 967, 980 (7th Cir. 1995). "Mere threats, inconvenience, or delay do not constitute duress unless they truly subvert the victim's will." *Flynn v. AerChem, Inc.*, 102 F. Supp. 2d 1055, 1061 (S.D. Ind. 2000) (citing *Raymundo v. Hammond Clinic Ass'n*, 449 N.E. 2d 276, 283 (Ind. 1983)). The evidence cited by Mrs. Crumpton does not show that the Employees' will was subverted, but rather suggests that it simply would have been "inconvenient" or perhaps difficult for them to find new jobs. She has not established that the Employees "lacked a reasonable opportunity to avoid the threatened consequences in some other way." *MCM Partners*, 62 F.3d at 980-81. As such, the Employees did agree to the conspiracy despite the Defendants' "mere threats." Furthermore, this affirmative defense might properly be raised by the Employees had any of them been criminally charged

with conspiring to submit the false claims, but none of them have.[2]  It is not, therefore, clear to the Court that Mrs. Crumpton can use a duress defense to benefit *her*.  The defense of duress is not intended to benefit the person who allegedly made the threats, but rather, to serve as a defense to criminal liability for the alleged victims.  Accordingly, the Court does not find this last argument to be persuasive.

### IV.    CONCLUSION

The Court finds that the Government has shown by a preponderance of the evidence that the conspiracy described in its proffer existed, that the named Employees were members of the conspiracy, and that the statements expected to be elicited at trial were made during and in furtherance of the conspiracy.  Pursuant to Rule 104, the Court makes this preliminary determination.  Accordingly, the Court will conditionally admit these statements pursuant to Rule 801(d)(2)(E) subject to a final ruling at the close of the Government's case once the Court has seen the evidence. *See Santiago*, 582 F.2d 1128.

SO ORDERED:   12/2/13

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication

---

[2] This includes the three Employees who have been criminally charged—none of them have been charged with conspiracy.

8