UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO.  1:12-cr-0143-WTL-TAB |
| ) | |
| DONALD E. CRUMPTON and ) | -01 |
| LAFAWN CRUMPTON, ) | -02 |
| ) | |
| Defendants. ) | |

### ENTRY ON MOTION TO SUPPRESS

This cause is before the Court on Defendant LaFawn Crumpton's motion to suppress (dkt. no. 140). Specifically, she seeks to suppress evidence obtained from a June 30, 2008, search and seizure conducted by an Indiana Family and Social Services Administration investigator. The Government responded (dkt. no. 151), and Mrs. Crumpton submitted a Reply (dkt. no. 155) and a Supplemental Reply (dkt. no. 157) in support of her motion. For the reasons explained herein, the motion to suppress is **DENIED**.

### I.  BACKGROUND

Mrs. Crumpton and her husband, Defendant Donald Crumpton, owned Little Miracles, Inc., a corporation that operated several child care centers in Indianapolis, Indiana. Little Miracles participated in two federally-funded programs designed to provide economically disadvantaged children with both child care services and meals and snacks while attending approved centers—the Child Care Development Fund Voucher Program ("CCDF") and the Child and Adult Care Food Program ("CACFP"). CCDF is administered by the Indiana Family and Social Services Administration's ("FSSA") Bureau of Child Care Development, and CACFP is administered by the Indiana Department of Education.

In June 2008, FSSA began receiving reports that Little Miracles was in possession of CCDF card numbers and using them to enter false hours of attendance at its centers. On June 30, 2008, FSSA investigator Duane Scott Davis visited the Little Miracles-West Child Care Center. While there, he entered a private office and searched and seized a closed, brown-colored briefcase. The briefcase was in the possession of Lashonn Mitchell, the Little Miracles-West center director. Mitchell originally told Davis that the briefcase belonged to her, but eventually admitted that the briefcase belonged to a former center director named Gibson. The briefcase contained CCDF information—card and personal identification numbers—that Little Miracles wrongfully possessed and allegedly used to submit false claims. The Defendants were subsequently charged with conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, money laundering, and falsification of records.

## II. **DISCUSSION**

In this motion, Mrs. Crumpton alleges that the warrantless entry of a private office at the Little Miracles-West Child Care Center and the subsequent search and seizure of the briefcase violated the Fourth Amendment. She thus argues that any evidence obtained during the search and seizure must be suppressed. Each argument will be addressed, in turn, below.

### A.  Warrantless Entry Into a Private Office

Mrs. Crumpton argues that no exigent circumstances were present to justify a warrantless entry into a private office at the Little Miracles-West Child Care Center. While "[a] warrantless search without exigent circumstances is presumptively unreasonable and generally requires suppression of the evidence obtained from the search," a "defendant's voluntary consent to the search" is an exception to this general rule. *United States v. Lewis*, 608 F.3d 996, 999 (7th Cir. 2010) (citing *United States v. McGraw*, 571 F.3d 624, 628 (7th Cir. 2009)).

The Government attached to its response a CCDF Child Care Provider Statement ("the Statement") signed by Mrs. Crumpton on September 28, 2004.  The Statement provides, in relevant part, "I must allow applicable state and local licensing agent(s) to enter and inspect, without notice, the child care facility during normal business hours." Dkt. No. 151-1.  As such, the Government argues that Mrs. Crumpton consented to the entry of the Little Miracles-West Child Care Center, including the private office.

Mrs. Crumpton, however, argues that her consent given by this Statement should not be read too broadly.  She argues that Davis should have only been inspecting the facility to ensure it was in compliance with the requirements listed on the CCDF Provider Eligibility Standards Checklist, that he had no reason to enter the private office, and that the true purpose of his visit was to conduct a criminal investigation.  Essentially, Mrs. Crumpton argues that this search exceed the scope of her consent given by the Statement she signed.  The Court disagrees.

In order for a consent search to be valid, it has to remain within the boundaries of the consent that was originally given. *United States v. Long*, 425 F.3d 482, 486 (7th Cir. 2005).

> The scope of consent is limited by the breadth of actual consent, and whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of all the circumstances.  In determining the scope of a defendant's consent, we apply an objective standard:  what would the typical reasonable person have understood by the exchange between the officer and the suspect?

*Id*. (internal citations and quotations omitted).  For the purposes of this motion, therefore, the Court needs to determine what a reasonable person would have understood Mrs. Crumpton was consenting to when she signed the Statement.

The Court initially notes that the consent given, allowing "applicable state and local licensing agent(s) to enter and inspect, without notice, the child care facility during normal business hours," contains no limitations or qualifications—there is no provision exempting

3

private offices, or any other area in the "child care facility." On its face, it allows the entry and search of the entire facility. Further, as a CCDF approved provider, Little Miracles had to keep numerous documents on file in order to remain eligible and receive reimbursements from the State. *See* dkt. no. 155-1. These documents include, among others, monthly fire drill reports, annual CPR certifications, employee drug test results, immunization records for each enrolled child, and a written child discipline policy. *Id*. It would be reasonable, and likely, that these documents be kept in a private area, like an office, at the child care facility in order to prevent the public from readily having access to them. Accordingly, the consent given would allow the agents to enter and search these private areas where the documents would be found to ensure compliance.

The Court, therefore, believes it is reasonable to conclude that the consent given by Mrs. Crumpton allowed Davis to enter a private office. He was a state agent, he entered Little Miracles-West Child Care Center during regular business hours, and the private office was part of that facility. As such, there was no Fourth Amendment violation when Davis entered, without a warrant, the private office at Little Miracles-West Child Care Center as Mrs. Crumpton consented to the entry by signing the Statement.

### B. Search and Seizure of the Briefcase

Mrs. Crumpton next argues that the warrantless search and seizure of the brown-colored briefcase located in the private office violated the Fourth Amendment because there was no reasonable basis to conclude the destruction of evidence was imminent and no exigent circumstances were present. The Government argues that Mrs. Crumpton has no standing[1] to

---

[1] The Government frames this issue as one of standing to challenge the search. However, as the Seventh Circuit has noted, "'in determining whether a defendant is able to show the violation of his . . . Fourth Amendment rights, the definition of those rights is more properly

assert this argument because she did not own the briefcase—Mitchell had possession of the briefcase and informed Davis that it belonged to Gibson, a former Little Miracles center director.

The Government is correct that "Fourth Amendment rights are personal . . . which may not be vicariously asserted." *U.S. Figueroa-Espana*, 511 F.3d 696, 703 (7th Cir. 2007) (quoting *United States v. Jackson*, 189 F.3d 502, 507 (7th Cir. 1999)).  The test, therefore, for determining whether a person has standing to challenge a search is whether that person had a "legitimate expectation of privacy" in the object searched. *United States v. Carlisle*, 614 F.3d 750, 756 (7th Cir. 2010).  "When considering whether an individual has a legitimate expectation of privacy, a court must consider:  (1) whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy; and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable." *Id*. at 756-57.  Mrs. Crumpton has the burden of showing she had a legitimate expectation of privacy in the briefcase. *See United States v. Mendoza*, 438 F.3d 792, 795 (7th Cir. 2006) ("[A] defendant objecting to a search bears the burden of proving that he or she had a legitimate expectation of privacy in the actual area searched.").

Other than that the briefcase was in a private office—which the Court has already established was allowed to be entered due to the Statement signed by Mrs. Crumpton—there is no other evidence presented by Mrs. Crumpton supporting the conclusion that she had a legitimate expectation of privacy in her former employee's briefcase.  It is not enough that Mrs. Crumpton may be "aggrieved by the introduction of damaging evidence derived from the search." *Bond v. United States*, 77 F.3d 1009, 1013 (7th Cir. 1996) (citing *United States v.*

---

placed within the purview of substantive Fourth Amendment law than within that of standing.'" *United States v. Figueroa-Espana*, 511 F.3d 696, 703 n.1 (7th Cir. 2007) (quoting *Minnesota v. Carter*, 525 U.S. 83, 87-88 (1998)).  To be clear, the Court shall continue to refer to this issue as the "standing issue" even though this is not technically correct.

*Padilla*, 508 U.S. 77, 81-82 (1993)).  As such, her Fourth Amendment rights were not violated by the warrantless search and seizure of the briefcase.

The Court notes that its ruling on this motion to suppress is certainly fact-specific.  It, therefore, invites further objections to the introduction of the evidence obtained from the search and seizure of the briefcase during trial should other facts be presented that may, indeed, require further analysis and/or a change of its ruling.

### III.  CONCLUSION

For the foregoing reasons, Defendant LaFawn Crumpton's motion to suppress (dkt. no. 140) is **DENIED**.

SO ORDERED:   12/04/2013

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication